CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
DEC 15 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CHRISSY D. UTT, )
) Civil Action No. 5:09CV00037
Plaintiff, )
)
v. ) **MEMORANDUM OPINION**
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, ) By: Hon. Glen E. Conrad
) United States District Judge
Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits, disabled adult child benefits, and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, 42 U.S.C. § 402(d), and 41 U.S.C. §§1381-1383(f), respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and arguments submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Chrissy D. Utt, was born on December 18, 1982 and eventually reached the twelfth grade in school. Ms. Utt has worked as a custodian, salad bar attendant, waitress, and secretary. She last worked in 2006. On August 8, 2006, Ms. Utt filed applications for disability insurance benefits, disabled adult child benefits, and supplemental security income benefits. She alleged that she became disabled for all forms of substantial gainful employment on June 1, 2002 due to a schizoaffective disorder with depression, and related symptoms including paranoia, auditory

hallucinations, depression, and suicidal ideation. Ms. Utt now maintains that she has remained disabled to the present time. As to her claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act through the first quarter of 2007, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, Ms. Utt is entitled to disability insurance benefitst only if she has established that she became disabled for all forms of substantial gainful employment on or before March 31, 2007. See gen., 42 U.S.C. § 423(a). As to her claim for disabled adult child benefits, the record reveals that plaintiff reached the age of 22 on December 18, 2004. Accordingly, she is entitled to disabled adult child benefits only if she has established that she became disabled for all forms of substantial gainful employment prior to that date. See 42 U.S.C. § 402(d)(1)(B).

Ms. Utt's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated February 29, 2008, the Law Judge also determined that plaintiff is not disabled. The Law Judge ultimately decided plaintiff's case under the fourth step of the sequential disability analysis established under the Administrative Regulations, 20 C.F.R. §§ 404.1520 and 416.920. Under the first step, the Administrative Law Judge noted that while Ms. Utt engaged in work activity after her date of alleged disability onset, as well as after the date of her 22nd birthday, her work activity was not so regular and remunerative as to constitute substantial gainful activity such as to justify a finding of not disabled. See 20 C.F.R. §§ 404.1520(b) and 416.920(b). For purposes of the second step of the sequential disability analysis, 20 C.F.R. §§ 404.1520(c) and 416.920(c), the Law Judge ruled that Ms. Utt suffers a severe combination of impairments based on schizoaffective disorder, personality disorder, and a history of attention deficit hyperactivity disorder. The Law

Judge determined that these mental and emotional impairments do not meet or equal a listed impairment under Appendix I to Subpart P of the Administrative Regulations Part 404, so as to establish plaintiff's disability based strictly on medical considerations under the third step of the sequential disability analysis. See 20 C.F.R. §§ 404.1520(d) and 416.920(d). Under the fourth step of the sequential disability analysis, the Law Judge held that plaintiff retains sufficient functional capacity "to perform simple, routine work [ ] that is performed in a stable environment and does not require fast-paced work to meet production quotas." (TR 29). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that, at all relevant times, Ms. Utt retained sufficient functional capacity to perform her past relevant work as a custodian, waitress, or salad bar attendant. Accordingly, the Law Judge ultimately concluded that plaintiff is not disabled, and that she is not entitled to benefits under any of the three federal programs. See, gen., 20 C.F.R. §§ 404.1520(f) and 416.920(f). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Utt has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the

claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. Ms. Utt has a history of mental and emotional impairments. She was found to be suffering from attention deficit hyperactivity disorder in 2002. She has also been treated for depression for several years. In October of 2005, Ms. Utt was hospitalized for treatment of schizophrenia. She was again hospitalized in May of 2006 and was eventually transferred to Western State Hospital. She was discharged from Western State Hospital on September 27, 2006. She was again hospitalized at her local medical center on September 16, 2007 for treatment of nervousness and paranoia. Ms. Utt has been monitored by Dr. Patti Moulton, a psychiatrist, since 2006. Dr. Moulton has submitted several reports and letters indicating that Ms. Utt is totally disabled based on schizoaffective disorder.

As previously noted, the Administrative Law Judge decided plaintiff's case at the fourth step of the sequential disability analysis, ruling that she possesses sufficient functional capacity to return to several of her past relevant work roles. The Law Judge reviewed all of the medical evidence, and concluded that plaintiff retains sufficient functional capacity to perform simple, routine work in a stable environment, which does not require fast-paced activity or production quotas. In determining that Ms. Utt retains sufficient functional capacity to return to several of her past work roles, the Administrative Law Judge explicitly relied on the testimony of a vocational expert who appeared at the administrative hearing in this matter. The Administrative Law Judge commented as follows:

> In response to questions posed by the ALJ, the vocational expert indicated that the established residual functional capacity in Finding 5 would permit the claimant to return to any of her prior jobs and to resume employment as a custodian, clerical

worker, or waitress. The vocational expert testified that they could also identify a significant number of other unskilled light jobs that would accommodate the established residual functional capacity. By way of illustration, the independent vocational expert identified the jobs of production inspector (361,000 jobs in the nation and 6,700 jobs in Virginia), hand packer (301,000 jobs in the nation and 4,800 jobs in Virginia), and custodian (2,000,000 jobs in the nation and 4,500 jobs in Virginia). The ALJ finds that these jobs exist in significant numbers and are within the claimant's residual functional capacity and that the claimant is able (and has been able) to perform these jobs even if she had no past relevant work. (TR 31).

The difficulty with the Law Judge's treatment of this case is that, in conducting his analysis, the vocational expert was not asked to consider any of the specific manifestations of plaintiff's psychiatric disorder. For example, in assessing the severity of plaintiff's medical problems, the Law Judge cited with approval a psychological report in which Ms. Utt is said to experience moderate limitations in her ability to maintain attention and concentration for extended periods; moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors; and moderate limitations in her ability to respond to changes in the work setting. (TR 27). The Law Judge specifically found that, during the period in question, Ms. Utt suffered from moderate limitations of social functioning; moderate limitations of concentration, persistence, and pace; and one episode of decompensation of extended duration. (TR 28).

Dr. Barry Hensley testified as a vocational expert at the administrative hearing. In response to questioning from the Law Judge, Dr. Hensley summarized plaintiff's vocational history, identifying the jobs she had performed, as well as their exertional and skill levels. The Law Judge then put what was to become the case dispositive hypothetical question to Dr. Hensley:

> Q [ALJ]: Okay. Assume we're dealing with a person who can do simple, routine work that does not involve production-rate pace work in a stable environment. There's no exertional limits, you know, simple, routine work that does not involve production-rate pace work in a stable environment. Could such a person do the Claimant's past work as actually performed?

| | |
|---|---|
| A[VE]: | The custodial work is certainly available under that criteria. And if you consider the secretarial or clerical work as SGA, she could do that work, and certainly could work as a waitress. |
| Q: | And the same is true as generally performed in the national economy? |
| A: | Yes, sir. |

(TR 75).

As previously noted, in finding that plaintiff retains sufficient functional capacity to return to her past relevant work roles as a custodian, clerical worker, and waitress, the Law Judge relied on no evidence other than the vocational expert's testimony. Yet, the vocational expert was not asked to consider how plaintiff's schizoaffective disorder affects her capacity to do basic work functions. The vocational expert was not asked to consider that Ms. Utt experiences moderate limitations in her ability to maintain attention and concentration, to remember and execute detailed instructions, and to accept instructions and respond to criticism from supervisors. Thus, as it now stands, the Commissioner's opinion gives no indication that any fact-finder considered whether a person could work as a custodian, waitress, or salad bar attendant despite moderate limitations in her ability to perform basic work-related nonexertional functions. If the Law Judge believed that plaintiff's schizoaffective disorder, which has required three separate hospitalizations, does not result in any limitations which affect her capacity to perform simple, routine work, the Law Judge should have simply so stated and terminated the inquiry. As it now stands, the critical factual determination of this case was made by a vocational expert without reference to the particular mental and emotional manifestations caused by plaintiff's severe mental and emotional impairments. In essence, the Law

Judge transferred the decision making function to the vocational expert without arming the expert with all the critical facts.

Under 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2), it is provided, in pertinent part, as follows:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person <u>with the physical and mental limitations imposed by the claimant's medical impairment(s)</u> can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy. (Emphasis added).

In <u>Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit recognized the same principle:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments. (citations omitted).

Inasmuch as the Administrative Law Judge clearly relied on the testimony of the vocational expert in concluding that Ms. Utt retains sufficient functional capacity to perform past relevant work roles, and inasmuch as the hypothetical questions put to the vocational expert did not include all of the nonexertional limitations documented in this case, the court must conclude that the Commissioner's final decision denying entitlement at step four of the sequential disability analysis is not supported by substantial evidence. The court finds "good cause" for remand of this case so

that plaintiff's capacity for past relevant work can be considered in the context of all of the manifestations associated with Ms. Utt's severe mental and emotional impairments.

On appeal to this court, plaintiff argues that the final decision of the Commissioner should be reversed and that she should be found entitled to a period of disability and appropriate disability benefits. Most of the arguments raised by plaintiff deal with technical inadequacies in the administrative adjudication, and do not relate directly to the merits of the case. The court concludes that such inadequacies are best addressed on remand. However, the court believes that plaintiff's arguments regarding the Commissioner's rejection of the opinions of her treating psychiatrist require some comment. As noted above, Dr. Moulton has opined on several occasions that Ms. Utt's schizoaffective disorder produces totally disabling manifestations. However, as properly noted by the Administrative Law Judge, the notes from the treating sources in this case create some question as to whether Ms. Utt's severe psychiatric symptoms have ever persisted for a period of sufficient duration as to establish entitlement to benefits. Indeed, there is some reason to believe that with appropriate psychiatric intervention and maintenance, plaintiff's most serious symptoms of hallucinations, suicide ideation, and depression can be successfully treated and minimized. Moreover, the treating medical sources have consistently reported global assessment of function scores which are suggestive of less than disabling nonexertional impairments.[1] In short, given the current state of the medical record, the court believes that the better alternative is to remand the case with the recommendation that the Commissioner receive input from a medical advisor as to the severity and duration of plaintiff's psychiatric impairment and personality disorder.

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, D.C., American Psychiatric Association, 2000.

For the reasons stated, the court finds good cause to remand this case for additional consideration as outlined above. An appropriate order of remand will be entered this day. Upon remand, the Commissioner shall conduct a new administrative hearing, at which both sides will be allowed to present additional evidence and argument.

The clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER this 15th day of December, 2009.

_____
United States District Judge